UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
DAVID LEBRON,

                     Plaintiff,

   -against-

ANTHONY J. FURCO, individually,
GEORGE O. DARDEN, individually,
NORAMIE F. JASMIN, individually,
PHILLIP M. ROSENTHAL, individually,
BETTIE J. BROWN, individually,
JOSEPH A. DESMARET, individually,
And the VILLAGE OF SPRING
VALLEY, New York,

                     Defendants.
-------------------------------------x

**AMENDED COMPLAINT**

**07 Civ. 1293 (KMK)(LMS)**

**Jury Trial Demanded**

      Plaintiff DAVID LEBRON, by his attorneys Young & Bartlett, LLP, for his complaint respectfully states:

## NATURE OF ACTION

1.      This is an action for compensatory and punitive damages, proximately the result of conduct engaged in by Defendants jointly and under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by reason of 42 U.S.C. §§1981, 1983, 2000e *et seq.*

## JURISDICTION

2.      The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. Plaintiff's state law claim is interposed in accordance with the Court's supplemental jurisdiction, 28 U.S.C. §1367. With respect to Plaintiff's Title VII claim, on or about June 2, 2006, he duly filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission. On December 21, 2006, the Civil Rights

Division of the United States Department of Justice issued to him a Notice of a Right to Sue.

## THE PARTIES AND CERTAIN FACTS

3.      Plaintiff DAVID LEBRON is a citizen of the United States, a domiciliary of the State of New York, and a resident of the City of New York. He is Hispanic, fluent in the Spanish language, has a B.S. in Criminal Justice, and at all times relevant to this complaint was employed by Defendant Village as one of its two Police Officers state-certified in Spanish. As a proximate result of his ethnicity and national origin, during his tenure with the Village Plaintiff has been subjected to disparate treatment including, *inter alia*:

a. Being reprimanded for having a single accident with a police vehicle, in contrast to at least one female African-American officer who with impunity has had multiple motor vehicle accidents with such vehicles.

b. Being in-writing counseled with respect to his sick time usage, in contrast to his male Caucasian counterparts who with impunity have used substantially more sick time than Plaintiff.

c. Being in-writing counseled with respect to his productivity in issuing traffic tickets, in contrast to his male Caucasian counterparts who with impunity have had considerably lower productivity in that respect.

d. Being skipped for appointment to the Police Department's "Tactical Team" in favor of a male Caucasian officer with lesser qualifications.

e. Being skipped for appointment as a Field Training Officer in favor of a male officer of Haitian national origin with one-third the police experience as Plaintiff.

4. Defendant ANTHONY J. FURCO (hereinafter "Furco"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as the Chief of Police of the Defendant Village. With respect to departmental and/or appointments Furco recommends individuals to the Village Board which in turn and by rote routinely makes the final administrative determination(s) as requested by Furco.

5. Defendant GERGE O. DARDEN, NORAMIE F. JASMIN, PHILIP M. ROSENTHAL, BETTIE J. BROWN, JOSEPH A. DESMARET (hereinafter collectively referred to as the "Village Board") respectively are the Mayor, Deputy Mayor, and Trustees of the Defendant Village and as such constitute its duly elected legislative body.

6. Defendant VILLAGE OF SPRING VALLEY, New York (hereinafter "Village") is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said state.

## THE FACTS

7. Following years of service in the New York City Police Department, on or about March 11, 1998, Plaintiff was hired by the Village at a time its then Chief of Police (John Kelly) appreciated the need to hire Police Officers state-certified in Spanish given the ever growing Hispanic population in the community. At or about the same time and also under Kelly's tenure, a second officer (Marta Rodriguez), who too was state-certified

in Spanish, was also hired - - having served as a member of the New York City Police Department.

8. Upon Kelly's retirement, Furco was promoted by the Village Board as his successor. Unlike Kelly and despite the ever-increasing Hispanic constituency in the Village, Furco, out of disdain for the Hispanic community, has for years declined and/pr refused to utilize the services of either state-certified officers - - instead utilizing as translators for Spanish speaking criminal Defendants:

a. A Police Officer of Haitian national origin, who attempts to communicate in broken Spanish (having never been state tested and/or certified in that language), and,     b. A Police Officer of Portuguese national origin, who attempts to communicate in broken Spanish.

9. During Furco's tenure and upon his recommendation, the Village Board repeatedly promoted only male Caucasians including:

i. Steven Levy, who at the time he was promoted to Detective Sergeant had averaged between thirty and forty sick days per year,

ii. Edward Hughes, who at the time he was promoted to Detective, averaged approximately twenty-five sick days per year,

iii. Daniel McWilliams, who at the time of his appointment as Sergeant had over the preceding four years utilized one hundred thirty-nine sick days.

10. In November of 2005 and following Plaintiff's placement on a certified civil service eligible list as the number "1" ranked candidate for promotion to Sergeant, interviews for that position were concluded, as a result of which:

      a. The male Caucasian who ranked number "2" on the subject list, McWilliams, was promoted despite his use of one hundred thirty-nine sick days,

      b. Plaintiff, who had taken but fifty-four sick days in the preceding four years, was skipped for promotion in favor of an individual whose use of sick time during that period of time was only slightly less than Plaintiff's,

      c. Despite Furco's pronouncement that consideration for promotion in substantial respect depended upon the successful candidate's minimal use of sick time: "I don't care whether you are sick or legitimately or not. I need Sergeant's who are going to be here".

11. Thereafter in December of 2005, Plaintiff was again skipped for promotion, in favor of another male Caucasian, who according to department promotional standards was lesser qualified.

12. Subsequent to February 18, 2007, the Defendants engaged in a concerted effort to produce evidence, albeit false, untrue, and untrustworthy, showing that Plaintiff engaged in illegal, immoral, or conduct unbecoming of a police officer.

13. Attempts to gather such false information included, but was not limited to, pressuring individuals, some of whom were suspects of their own criminal activity, into providing false and misleading accounts of their encounters with Plaintiff.

14. On or about November 2, 2007, the Defendants charged Plaintiff with numerous crimes including inappropriate sexual conduct. Those allegations were false.

15. Based upon the aforementioned allegations, the Plaintiff was indicted by a Grand Jury. This indictment was later dismissed by a judge.

16. As a result of the arrest, Plaintiff was incarcerated.

17. In an effort to further harass and silence the Plaintiff, he was suspended from duty without pay and charged with eighty-eight administrative violations. The Defendant's have also resubmitted all of the charges to a subsequent Grand Jury and included one or more new charges. This was done in bad faith and without probable cause.

18. As a proximate result of Defendant's intentional discrimination against Plaintiff by reason of his ethnicity and natural origin, Plaintiff has been forced to endure: pecuniary losses both past, present, and future; public humiliation; impairment of his professional career; impairment of his professional and personal reputations; public embarrassment; shame; emotional upset; anxiety; and has otherwise been rendered sick and sore.

## AS FOR A FIRST CLAIM AGAINST THE VILLAGE

19. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

20. Under the premises, Defendant's conduct violated Plaintiff's rights as guaranteed by Title VII, 42 U.S.C. §2000e *et seq*.

## AS FOR THE SECOND CLAIM AGAINST ALL THE DEFENDANTS

21. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

22. Under the premises, Defendants' conduct violated Plaintiff's rights as guaranteed by Title VII, 42 U.S.C. §1941.

### AS FOR THE THIRD CLAIM AGAINST ALL DEFENDANTS

23. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

24. Under the premises, Defendants' conduct violated Plaintiff's rights as guaranteed by reason of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

### AS FOR A FOURTH CLAIM AGAINST ALL DEFENDANTS

25. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

26. Defendants' conduct violated Plaintiff's rights as guaranteed by reason of the First Amendment to the United States Constitution, 42 U.S.C. §1983.

### AS FOR A FIFTH CLAIM AGAINST ALL DEFENDANTS

27. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "18", inclusive.

28. Under the premises, Village as Plaintiff's employer and the individual Defendants as aiders and abettors violated Plaintiff's rights as guaranteed by Section 296 *et. seq* of the New York State Executive Law.

WHEREFORE a judgment is respectfully demanded:

a. On the First Claim awarding against the Village such compensatory damages as the jury may determine,

b. On the Second, Third, Fourth, and Fifth Claims awarding as against all Defendants such punitive damages as the jury may impose,

c. On the Second, Third, Fourth, and Fifth Claims awarding as against all Defendants such compensatory damages as the jury may determine,

d. On the First, Second, Third, and Fourth Claims awarding reasonable attorney's fees and costs, and,

e. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, NY
       July 2, 2008

YOUNG & BARTLETT, LLP.

By: s/ Francis X. Young   (8205)

Attorneys for Plaintiff
81 Main Street, Suite 118
White Plains, NY 10601
(914) 285-1500
fxylaw@aol.com